UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

AMERICAN SOUTHERN INSURANCE
COMPANY                                                                                          PLAINTIFF

v.                                                                CIVIL ACTION NO. 3:13cv689-DPJ-FKB

GEORGE RANDY WILLIAMSON, et al.                                              DEFENDANTS

ORDER

This declaratory-judgment action is before the Court on Plaintiff American Southern Insurance Company's Motion for Summary Judgment [64] and Amended Motion for Summary Judgment [75], along with Defendant George Randy Williamson's Motion to Strike the Affidavit of Judy Nall [60]. For the reasons that follow, the motions for summary judgment are granted, and the motion to strike is denied as moot because the Court did not consider the evidence.

I.   Facts and Procedural History

Plaintiff American Southern issued commercial general-liability policy No. GL508006 ("the Policy") to Donald Nall d/b/a Nallmark Electrical Contractors for the policy period running from February 6, 2010, through February 6, 2011. In April 2010, Defendant George Randy Williamson was seriously injured while assisting Nall in an electrical-contracting job on the premises of Mississippi Carbonic, LLC, a dry-ice facility. Williamson suffered significant burns to his face, head, hands, and arms, and was in a coma for approximately two months following the accident.

Nall died of unrelated causes in August 2012, and an estate was opened in Rankin County Chancery Court in April 2013. Immediately thereafter, Williamson sued the Nall Estate and others in Hinds County Circuit Court for damages resulting from the April 2010 incident. In

October 2013, the Nall Estate demanded a defense from American Southern. In response, American Southern filed this declaratory-judgment action against Williamson, the Nall Estate, and Nallmark Electrical Contractors, LLC, seeking a declaration as to its coverage obligations. Compl. [1]. Following the close of discovery, American Southern moved for summary judgment. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam).

III.     Analysis

American Southern offers four reasons to hold that the Policy affords no coverage for the underlying litigation: (1) Nall released American Southern from all liability resulting from the April 2010 accident; (2) Nallmark Electrical Contractors, LLC, did not exist at the time of the occurrence and was not an insured under the Policy; (3) Williamson was Nall's employee, thereby triggering the Employer's Liability Exclusion; and (4) in the alternative, Williamson was an employee of an independent contractor, triggering the Independent Contractors' Employees Exclusion. As discussed below, the Court agrees that Nallmark Electrical Contractors, LLC, was not an insured under the Policy and that Williamson was Nall's employee when the injury occurred. It is not, therefore, necessary to analyze the remaining arguments.

A.     Nallmark Electrical Contractors, LLC

American Southern argues that it does not owe Nallmark Electrical Contractors, LLC, any duties under the Policy because that legal entity did not exist until September 23, 2011—more than a year after the accident—and was not a named insured under the Policy. American Southern is correct. The Policy lists as its insured "DONALD NALL DBA NALLMARK ELECTRIC CONTRACTORS," and Nall and his then-existing sole proprietorship are the only parties entitled to any duties under the Policy. Policy [76-2] at 3; *see also id.* (describing the form of the business as an "Individual"); *id.* at 12 (defining "insured" and explaining that if the insured is designated in the declarations as an individual, the individual and the individual's spouse "are insureds, but only with respect to the conduct of a business of which you are the sole owner"). A limited liability company "is not a partnership and is recognized as a separate legal entity apart from its individual members." *Taylor v. Hartford Cas. Ins. Co.*, No. 2:09-cv-231

3

KS-MTP, 2010 WL 5158634, at *8, 999 (S.D. Miss. Dec. 14, 2010). American Southern's motion is granted as to Nallmark Electrical Contractors, LLC.

B.  Williamson's Employment Status

The parties' main dispute concerns Williamson's employment status. American Southern argues that Williamson was Nall's employee so that his claims are excluded under the Policy's Employer's Liability Exclusion. The significant policy provisions are as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

    1.    Insuring Agreement

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

. . . .

    2.    Exclusions

    This insurance does not apply to:

. . . .

        e.    Employer's Liability

            "Bodily injury" to:

    (1) An "employee" of the insured arising out of and in the course of:

      (a) Employment by the insured; or

      (b) Performing duties related to the conduct of the insured's business. . . .

. . . .

SECTION V – DEFINITIONS

. . . .

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary work".

. . . .

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

. . . .

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Policy [76-2] at 1, 2, 13–15.

   Williamson was not a "leased worker" because he was not leased "by a labor leasing firm." He was not a "temporary worker" because he was not "furnished to" Nall. *See In re S. La. Sugars Coop., Inc.*, 485 F.3d 291, 293 (5th Cir. 2007) (interpreting identical policy language). But because the Policy provides a limited definition of "employee," all parties looked to Mississippi common law to inform their construction of the term. The Court concurs in this approach. *See Emp'rs Mut. Cas. Co. v. Bonilla*, 613 F.3d 512, 521 (5th Cir. 2010) (remanding

5

employee-exclusion issue for further consideration and noting that Texas law would define the injured party's employment status).

Under Mississippi common law,

> The factors to be considered in determining the employee/independent contractor issue are: (1) The extent of control exercised over the details of the work; (2) Whether or not the one employed is engaged in a distinct occupation or business; (3) The skill required in the particular occupation; (4) Whether the employer supplies the tools and place of work for the person doing the work; (5) The length of time for which the person is employed; (6) The method of payment, whether by the time or by the job; and (7) Whether or not the work is a part of the regular business of the employer.

*Miss. Emp't Sec. Comm'n v. PDN, Inc.*, 586 So. 2d 838, 841–42 (Miss. 1991) (citing *Miss. Emp't Sec. Comm'n v. Plumbing Wholesale Co.*, 69 So. 2d 814 (Miss. 1954)). "The primary factor is the right to or degree of control." *PDN, Inc.*, 586 So. 2d at 842. "It is the ultimate right of control, not the overt exercise of that right, which is decisive. Probably the four principal factors under the control test, are (1) direct evidence of right or exercise of control; (2) method of payment; (3) the furnishing of equipment; and (4) the right to fire." *Ga.-Pac. Corp. v. Crosby*, 393 So. 2d 1348 (Miss. 1981) (internal quotation marks omitted).

"Where the facts are undisputed, determining the type of relationship is a legal question." *McKee v. Brimmer*, 39 F.3d 94, 96 (5th Cir. 1994) (citing *Richardson v. APAC-Miss., Inc.*, 631 So. 2d 143, 152 (Miss. 1994)). In the present case, there are a few facts that are not squarely aligned, most of which arise when comparing Williamson's deposition testimony against itself. That said, there are no material factual disputes. And when the record is viewed in a light most favorable to Williamson, the Court concludes that he acted as Nall's employee.

### 1. Right or Exercise of Control

Williamson contends that Nall did not control his work and was not his employer. As an initial matter, American Southern correctly observes that Williamson's "claims described in the Hind[s] County Complaint are claims of Williamson, an 'employee', against his 'employer' Donald W. Nall d/b/a Nallmark Electrical Contractors." Pl.'s Mem. [76] at 11. For example, Williamson averred that Nall "controlled the means, manner, and details of the work to be performed by [Williamson]." State Court Compl. [1–2] ¶ 33. This averment is incompatible with Williamson's current contention that he was not "being controlled at all by Mr. Nall." Def.'s Mem. [79] at 20 (quoting Williamson Dep. at 83–84). Typically, "factual assertions in pleadings . . . are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983). Thus, the Court could probably stop here. But even without regard to these judicial admissions, the record in the current case still shows that Nall had the right to control—and did control—Williamson's work.

To begin with, Williamson confirmed during his deposition testimony that on the day of the injury, he "was acting as an assistant to Nell [sic] during the performance of this job." Williamson Dep. [76-7] at 57. This admission is consistent with Williamson's undisputed lack of expertise in the electrical field. For example, he has no license or training to perform work as an electrician, *id.* at 15, 23; his adult employment history is unrelated to that field, *id.* at 10–11; and he is not bonded or insured to do electrical work, *id.* at 21, 33. When asked whether he had "any experience performing electrical work" apart from Nall, he responded, "Not much." *Id.* at 15.

As for the assignments, Williamson testified that Nall would occasionally call him to see if he wanted to assist Nall on a particular job. *Id.* at 53. Nall "would already have a job lined up . . . and if he needed help he would call." *Id.* Nall would tell them where to report and when. *Id*. at 43–44, 53.[1] Nall "would [also] tell us what he wanted, what needed to be done and then I would go, you know—we or whoever would just do it, you know. He told us like what he wanted and we did it." *Id.* at 49. This was true on the day of the accident. When asked whether Nall was "deciding what y'all did" that day, Williamson responded, "To the most point, he was. I mean, he would tell me what we had to do in the factory . . . ." *Id*. at 51.

These facts show that Nall exercised control over Williamson. They likewise satisfy elements two, three, and seven as addressed in *PDN, Inc.*, because Williamson was not engaged in a distinct occupation or business (factor two), he brought no particular set of skills to the occupation (factor three), and he performed work that was part of Nall's regular business (factor seven). 586 So. 2d at 841–42. And even though Williamson observes that he had some discretion about which assignments he wanted to perform when Nall assigned multiple tasks to multiple workers, Williamson Dep. [76-7] at 74, "a worker 'may be actually under slight supervision or control but still be an employee where [as in this case] the right of control existed and the service performed was a part of the regular business of the alleged employer,'" *Sun Vista, Inc. v. Miss. Dep't of Emp't Sec.*, 52 So. 3d 1262, 1267 (Miss. Ct. App. 2011) (citations omitted).

---

[1]Williamson admitted that he was "late" one day, *id.* at 43, indicating that Nall had set a time Williamson was expected to honor. But Williamson hedged about whether Nall controlled his hours and arrival time, explaining that he would "try to" show up when Nall asked him to but "it wasn't like he was going to fire me because I didn't work for him." *Id.* at 44.

These facts support a finding that Nall had the right to control Williamson's work and did. This is the decisive factor in the analysis. *PDN, Inc.*, 586 So. 2d at 842.

2. Method of Payment

There is no dispute Nall paid Williamson $10 per hour rather than a per-job or per-piece rate for the work he performed. Williamson Dep. [76-7] at 53. This factor favors employee status. *See, e.g.*, *Sun Vista, Inc.*, 52 So. 3d at 1268 (noting that employees were paid hourly).

3. Furnishing Equipment

Williamson contends that he furnished his own equipment. Here again, the assertion clashes with his state-court pleadings in which Williamson averred that Nall "owned, maintained, rented, managed, and/or otherwise controlled . . . all machinery and electrical equipment related to such work." State Court Compl. [1-2] ¶ 33. Williamson also contended in state court that it was Nall's duty to provide the necessary equipment. *Id.* ¶ 35(g) (asserting breach for "[f]ailing to provide and/or otherwise make available appropriate testing and safety equipment to the Plaintiff . . . , including, but not limited to, an arc flash suit, insulating gloves, insulating mats, a helmet and/or face shield, insulated tools, grounding devices, and/or other electrical safety equipment").

Aside from these judicial admissions, the remaining record evidence indicates that Nall provided at least some equipment, including the most significant equipment. According to Williamson, he brought a "little old tool pouch" with him when he worked for Nall. Williamson Dep. [76-7] at 16. But when asked if he used any tools Nall supplied at the subject work site, Williamson replied,

> "Oh yeah, everybody did. He had different kind of tools on his truck, the bigger stuff that he had, that he owned, you know. But as far as me doing just contract

9

labor for him, I had my own hand tools and things like that. That's all we usually used."

Id. at 44–45. As for the day the accident occurred, Williamson testified that he drove Nall's work truck to the work site that morning "because [Nall] wanted both trucks there." Id. at 40.[2] He also testified that he was using Nall's fish tape at the time of the accident because Williamson's tape was not sufficient. Id. at 50.

In sum, Williamson had some hand tools that he used on the job, but Nall owned and supplied the bigger tools Williamson used. This factor therefore suggests employee status. *See Sun Vista, Inc.*, 52 So. 3d at 1268 (finding employee status where employer "provided some of his tools").

### 4. The Right to Fire

Williamson insists that he "could not be fired by Nall." Def.'s Mem. [79] at 33. But his testimony is less emphatic:

A. I could quit, go home anytime I wanted to.

Q. And correspondingly, he could fire you at any time?

. . . .

A. Well, he could tell me he didn't need me no more at any time *if I was going to act like that*, you know.

Q. If Mr. Nall advised you at any given point that he didn't need your services further, you would simply leave at that point; is that correct?

A. Yes, sir.

---

[2]This fact also shows control.

Williamson Dep. [76-7] at 54–55 (emphasis added). In other words, Williamson felt that he could quit at any time (as could most employees), but he understood that if he "acted like that," Nall could terminate his employment. Again, this factor favors employee status.

In short, nothing about Williamson's testimony indicates that he was working independently from Nall's direction, supervision, and control. *Cf.* Miss. Code Ann. § 71-3-3 (defining independent contractor for purposes of workers compensation law as one "who contracts to do a piece of work according to his own methods without being subject to the control of his employer except as to the results of the work"). Instead, it supports his admission that he was working as Nall's assistant.

The Court's conclusion is buttressed by comparing two recent decisions by the Mississippi Court of Appeals. In *Mississippi Department of Employment Security v. Harbin*, the court affirmed a finding that a satellite installer was an independent contractor rather than an employee. 11 So. 3d 137, 138 (Miss. Ct. App. 2009). In *Harbin*, the employer would contact the installer

> and provide a work order and the customer's information, such as preferred time of installation. The installer would then set up a time with the customer to install the satellite. . . . [The employer] provided the satellite itself and connecting cables. The installer provided all of his own tools. . . .
>
> As far as payment, the installer was paid by the job . . . .
>
> [T]here was no set time for the installers' work schedule. [The employer] would merely fax or hand-deliver the work orders to the installers, who would then contact the customers on their own phones, in their own time and work out an installation time. . . . The installers were also required to provide their own independent contractor insurance . . . . [The employer] explained that he did not train installers; he only hired individuals with experience in the business who were familiar with the national electrical code and its guidelines.

*Id.* at 140–41. The Mississippi Court of Appeals concluded that the installer

> was acting as an independent contractor, not an employee . . . . Foremost, [the employer] did not exercise any control over the installation of the satellite dishes; he merely took the work orders. If a dish was installed incorrectly, the installer had to correct it at his own expense. . . . [The installer] had specialized training, which was not provided by [the employer], to install the equipment, and he had to meet certain safety and electrical guidelines. [The installer] could work for others if he desired, and he made his own schedule. [The employer] did not supply tools or a place of work for [the installer] . . . . [The installer] was paid by the job . . . . We find, as did the circuit court, the right of control [the employer] exercised over [the installer] did not rise to the level of an employer-employee relationship.

*Id.* at 141–42.

The Court of Appeals later distinguished *Harbin* in *Sun Vista, Inc. v. Mississippi Department of Employment Security*, where it affirmed a finding that a construction worker was an employee of a company that built and renovated homes. 52 So. 3d at 1264, 1265. There, the facts indicated that the employer

> determined [the worker's] duties. [The worker] was required to "dig the footings for a concrete driveway" and perform various other assigned duties. . . . [The worker] does not have a license to engage in the type work he performed and does not advertise his services to the public. . . . [The employer] supplied [the worker] with some tools, while [the worker] supplied the rest. . . . [The employer] paid [the worker] $12 per hour for his services. [The employer] did not require [the worker] to submit a bid. . . . [The worker] performed construction labor, which was integral to the regular operation of [the employer.]
>
> . . . [The employer] set [the worker's] work hours . . . and required [the worker] to take a lunch break around 11:30 a.m. or 12:00 p.m. Also, [the worker] was prohibited from delegating his duties or hiring a substitute to perform his work. [The worker] . . . was not allowed to determine his pay.

*Id.* at 1267. The court distinguished *Harbin*, summarizing:

> In contrast, [the worker] was paid hourly. Evidence supported that [the employer] set his work hours and provided some of his tools. There was no evidence of [the worker's] interaction with customers. [The worker] was not required to provide his own insurance. Finally, [the employer] hired [the worker] to perform general

12

construction work, which required no specialized training. For these reasons, we find *Harbin* distinguishable from this case.

*Id.* at 1268. While neither *Harbin* nor *Sun Vista* perfectly aligns with the facts of this case, "[t]here is no talismanic formula [courts] may mechanically apply." *Miss. Emp't Sec. Comm'n v. Total Care, Inc.*, 586 So. 2d 834, 838 (Miss. 1991). *Sun Vista* is a very close fit, and the Court concludes that Williamson was Nall's employee, thus triggering the Employer Liability Exclusion.[3]

C. Motion to Strike

Finally, Williamson moved to strike the affidavit of Nall's widow, Judy Nall. American Southern first produced Judy Nall's affidavit on the final day of discovery. Williamson immediately moved to reopen discovery to permit Defendants to depose Judy Nall and subsequently moved to strike her affidavit. Judge Ball reopened discovery for the limited purpose of allowing the deposition of Judy Nall, and the Court permitted American Southern to file an amended motion for summary judgment thereafter. Because Defendants were able to depose Judy Nall, the primary arguments for striking her affidavit are no longer in issue. Moreover, the Court did not need to resort to Judy Nall's testimony—either by affidavit or deposition—to rule on the motion for summary judgment, as Williamson's testimony alone was dispositive of the employment-status issue. The motion to strike is therefore denied as moot.

---

[3]Williamson testified that he was an independent contractor, Williamson Dep. at [76-7]; Nall apparently described Williamson as a contractor to American Southern's adjuster, Report [78-17]; and Nall's application for the Policy indicated that he had no employees, Policy [76-2] at 43. The application also indicated that Nall did not subcontract any work, *id.* at 44. Regardless, the labels the parties attached to their relationship "are only a part of the inquiry. . . . The true test incorporates a consideration of all of the facts and the economic realities." *Total Care, Inc.*, 586 So. 2d at 838.

IV.     Conclusion

The Court has considered all of the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, American Southern Insurance Company's Motion for Summary Judgment [64] and Amended Motion for Summary Judgment [75] are GRANTED, and Defendant George Randy Williamson's Motion to Strike the Affidavit of Judy Nall [60] is DENIED as moot. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 14th day of April, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE